# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KINGS RIVER PACKING LP**, | Case No. 1:25-cv-00022-JLT-SKO |
| Plaintiff, | **ORDER GRANTING MOTION TO INTERVENE** |
| v. | (Doc. 14) |
| **WKS AG CONSULTANTS INC.**, et al., | |
| Defendants. | |

On January 6, 2025, Plaintiff Kings River Packing LP ("Plaintiff") filed this action, naming WKS AG Consultants, Inc., d/b/a Top Shelf Produce Sales and Inspections ("Top Shelf") and William Slattery (collectively "Defendants"). (Doc. 1). On January 16, 2025, Plaintiff moved for a preliminary injunction, (Doc. 7), which the District Court granted exercising jurisdiction over Defendant's PACA Trust and enjoining payment from that trust for payments "up to $425,680.35 until (a) further Court Order, (b) full payment of the $425,680.35 principal balance, plus attorneys' fees, costs, and interest at 18% simple annual interest on the past due balance to Kings River Packing, LP . . . or (c) upon Kings River Packing, LP's agreement," (Doc. 11 at 5). Plaintiff amended their complaint on March 21, 2025, adding several more plaintiffs, including Silver Canyon Sales, Inc, Mountain View Fruit Sales Inc, and Kingsburg Orchards. (Doc. 20 ("FAC") ¶ 1). Plaintiffs allege claims under the Perishable Agricultural Commodities Act of 1930 ("PACA"), 7 U.S.C. §§ 499e *et seq.*, as well as claims for breach of contract, breach of fiduciary duty, and declaratory and injunctive relief.

1

On March 6, 2025, Trinity Fruit Company, Inc ("Trinity Fruit"), moved to intervene under Rule 24(a) or 24(b) of the Federal Rules of Civil Procedure. (Doc. 14 (the "Motion")). No party has opposed Trinity Fruit Company, Inc's request by the court-ordered date of March 20, 2025.

The District Court referred the motion to intervene to the undersigned for "appropriate action." (Doc. 17). As discussed below, the motion will be granted.

## I.   FACTUAL BACKGROUND

### A.   The Parties & Proposed Intervenor

Plaintiffs are corporations that allegedly sold perishable agricultural commodities to Defendant Top Shelf. (FAC. ¶ 6). Defendant William Slattery is allegedly Top Shelf's Chief Financial Officer and reported principal on Top Shelf's PACA license. (*Id.* ¶ 34). Proposed intervenor Trinity Fruit alleges that it too sold perishable agricultural commodities to Top Shelf for which it has not been paid. (Doc. 14-3 at 4).

### B.   The Pending Action

Plaintiffs allege that Top Shelf has failed to pay them $809,151.25, plus 18% interest per year for perishable agricultural commodities they sold to Top Shelf between March 8, 2024 and August 19, 2024. (FAC ¶ 6). Plaintiffs have sent Top Shelf invoices detailing the sums owed. (*Id.* ¶ 8). Plaintiffs' complaint seeks enforcement of PACA's statutory trust provisions.

Congress added trust provisions to PACA in 1984 to assist credit sellers of perishable agricultural commodities to merchants, dealers and brokers receive payment for their goods. As amended, the statute imposes a trust in favor of an unpaid seller on the commodities sold, the inventories of goods and products derived therefrom, and the accounts receivable and/or cash proceeds generated by their sale. *See* 7 U.S.C. § 499e(c)(2). So long as the seller has given timely notice of its intent to preserve benefits under the trust, the buyer holds the assets for the benefit of the seller until payment is made. *See* 7 U.S.C. § 499e(c)(2), (c)(3). Although trust funds may be commingled with other monies, the dealer is a fiduciary with respect to all funds traceable to the produce transaction. *See In re Milton Poulos, Inc.*, 947 F.2d 1351, 1352 (9th Cir. 1991) ("[T]he PACA provisions provide for the establishment of a nonsegregated trust under which a produce dealer holds its produce-related assets as a fiduciary until full payment is made to the produce

1  seller"). Plaintiffs allege that they have given Top Shelf the notice necessary to preserve their
2  right to trust funds of at least $809,151.25 under PACA. They contend that all defendants are
3  statutory trustees.

4  It is commonplace for a court to allow a seller who has not been paid for produce by a
5  dealer to intervene in an ongoing PACA case in which the dealer is already a defendant. *See, e.g.,*
6  *General Produce Co., LTD. v. Warehouse Markets, LLC*, 2:13-cv-0750-MCE-DAD, at 3 (E.D.
7  Cal. Apr. 10, 2014) (ECF 30); *Iscavo Avocados USA, L.L.C. v. Pryor*, 953 F.3d 316, 318 (5th Cir.
8  2020); *A & J Produce Corp. v. Bronx Overall Econ. Dev. Corp.*, 542 F.3d 54, 57 (2d Cir. 2008);
9  *Country Best v. Christopher Ranch, LLC*, 361 F.3d 629, 631 (11th Cir. 2004); *Consumers Produce*
10 *Co., Inc. v. Volante Wholesale Produce, Inc.*, 16 F.3d 1374, 1378 (3d Cir. 1994).

11 Trinity Fruit has moved to intervene in this action as a plaintiff and assert claims against
12 defendants for violation of PACA's statutory trust provisions, as well as claims for breach of
13 contract, failure to pay for goods sold, and interest and attorney's fees. (*See* Doc. 14-1). Trinity
14 Fruit alleges that between August 9, 2024 and September 25, 2024, it sold Top Shelf $119,084.90
15 worth of produce for which it has not received payment. (Doc. 14-1 ¶¶ 8, 25). As a result, it
16 asserts, a statutory trust in its favor arose under PACA. (*Id.* ¶ 11). Trinity Fruit alleges it provided
17 all notices required to preserve its benefits under the trust, (*id.* ¶ 15), and contends it has an interest
18 in the trust *res* and is therefore entitled to intervene under Rule 24 of the Federal Rules of Civil
19 Procedure to protect its interest (*see* Doc. 14-3 at 4–5).

20                                       **II.   DISCUSSION**
21 **A.   Legal Standard**

22 As the party seeking leave, Trinity Fruit bears the burden of demonstrating that it is entitled
23 to intervene. *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) ("The party
24 seeking to intervene bears the burden of showing that *all* the requirements for intervention have
25 been met."). To intervene as of right under Rule 24(a), a party must claim an interest relating to
26 the property or transaction that is the subject of the action, protection of which may, as a practical
27 matter, be impaired or impeded if the lawsuit proceeds without it. The Ninth Circuit utilizes a
28 four-part test in determining when intervention is appropriate under the rule:

> (1) the motion must be timely; (2) the applicant must claim a 'significantly protectable' interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Sierra Club v. United States EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993). All four criteria must be met before intervention can be ordered under Rule 24(a). *See Chamness v. Bowen*, 722 F.3d 1110, 1121 (9th Cir. 2013). The Ninth Circuit interprets the rule broadly in favor of intervention. *See Sierra Club*, 995 F.2d at 1481.

**B.   Analysis**

    1.   Timeliness

The Ninth Circuit has identified three factors that are relevant in assessing the timeliness of a proposed intervenor's application: (1) the stage of the proceedings at which the motion is made; (2) whether existing parties would be prejudiced; and (3) the reason for any delay in seeking leave to intervene. *Northwest Forest Resource v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996); *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990), *cert. denied*, 501 U.S. 1250 (1991). "Although the point to which the suit has progressed is one factor in the determination of timeliness, it is not solely dispositive. Timeliness is to be determined from all the circumstances. And it is to be determined by the court in the exercise of its sound discretion." *NAACP v. New York*, 413 U.S. 345, 366 (1973).

This case is in its early stages. Plaintiffs have filed a complaint and an amended complaint. (Docs. 1, 20). No scheduling conference has been held. It cannot be said, therefore, that proposed intervenor's motion is untimely. *Compare Cummings v. United States*, 704 F.2d 437, 439 (9th Cir. 1983) (holding that a motion to intervene was timely even though it was filed after the date for interrogatories had passed and two weeks before the date set for the close of discovery); *Nikon Corp. v. ASM Lithography B.V.*, 222 F.R.D. 647, 649 (N.D. Cal. 2004) (holding that a motion to intervene was timely despite the original parties "'cover[ing] a lot of legal ground together,' establishing the calendar for this litigation, filing potentially dispositive motions, and participating in the construction of dozens of claim terms")); *with California Dept. of Toxic Substances Control*

1  *v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002) ("In the present case,
2  Cities did not move to intervene until after the parties settled, more than six years after litigation
3  commenced, and on the same day DTSC moved for judicial approval of the consent decree.
4  Intervention at such a late stage weighs heavily against Cities"); *League of United Latin Am.*
5  *Citizens v. Wilson*, 131 F.3d 1297, 1303 (9th Cir. 1997) (holding that a motion to intervene was
6  untimely where the case was in an advanced stage of litigation); *County of Orange v. Air*
7  *California*, 799 F.2d 535, 538 (9th Cir. 1986) (holding that the timing of a motion to intervene,
8  filed after the parties had come to an agreement following five years of litigation, weighed heavily
9  against permitting intervention even though the agreement had not yet been officially approved
10 by the district court).

11  In considering the prejudice to the existing parties, the Court finds that there would be no
12 prejudice, as evidenced by the fact that no party has opposed the motion to intervene.  As noted,
13 the action is in its early stages, and permitting intervention would not unduly protract the litigation
14 or complicate the issues at hand.  *Cf. California Dept. of Toxic Substances Control*, 309 F.3d at
15 1119 (holding that the district court "did not abuse its discretion in finding prejudice to the parties,
16 since intervention by Cities would complicate the issues and upset the delicate balance achieved
17 by the Oil Consent Decree"); *United States v. State of Washington*, 86 F.3d 1499, 1504 (9th Cir.
18 1996) (finding no abuse of discretion by the district court "because intervention would complicate
19 the issues and prolong the litigation").

20  Because the proceedings are in their beginning stages and none of the existing parties
21 would be prejudiced by intervention, the court concludes that Trinity Fruit's motion to be timely.

22      2.    <u>Significantly Protectable Interest</u>

23  Whether an applicant for intervention as of right demonstrates a sufficient interest in an
24 action is a "practical, threshold inquiry.  No specific legal or equitable interest need be
25 established."  *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993).  "An applicant for
26 intervention has a significantly protectable interest if the interest is protected by law and there is
27 a relationship between the legally protected interest and the plaintiff's claims."  *Alisal Water*
28 *Corp.*, 370 F.3d at 919; *see also Forest Conservation Council v. United States Forest Service*, 66

F.3d 1489, 1493 (9th Cir. 1995). The "relationship" requirement is generally satisfied "only if the resolution of the plaintiff's claims will actually affect the applicant." *Arakaki v. Cayetano*, 324 F.3d 1078, 1084 (9th Cir. 2003) (quoting *Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998)).

Here, Trinity Fruits argues that it has a significantly protectable interest in the outcome of this case because it, like Plaintiffs, has a valid claim to a pro rata distribution of PACA trust funds. "Because PACA trusts are intended for the benefit of all unpaid suppliers, all beneficiaries to a trust share the same priority." *Country Best*, 361 F.3d at 632 (*citing Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 159 (11th Cir. 1990) (all unpaid sellers are entitled to a pro rata share of PACA trust funds)). Therefore, if Trinity Fruit's allegations are true, it is entitled to share in the trust funds with the same priority as Plaintiffs. In sum, because Trinity Fruits claims an interest in the limited fund that is the subject of this suit, it has a significantly protectable interest that satisfies Rule 24(a)(2). *See, e.g.*, *General Produce Co., LTD.*, 2:13-cv-0750-MCE-DAD, at 3 *Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366–67 (3d Cir. 1995); *see also* 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE & PROCEDURE, § 1908.1, at 315-17 (3d ed. 2007) ("A sufficient interest [under Rule 24(a)(2)] also has been found when the intervenor claims an identifiable interest in funds that are the subject of litigation"); *id.* at 317 n. 27 (collecting cases).

### 3. Inability to Protect Interest Absent Intervention

"To intervene as a matter of right, [proposed intervenor] must be 'so situated that the disposition of the action may as a practical matter impair or impede his ability to protect his interest.'" *Stockton v. United States*, 493 F.2d 1021, 1022 (9th Cir. 1974). A proposed intervenor does not necessarily need to prove any legal impairment that the outcome of the case might have on its ability to protect its interest: "It is enough that [its] interest is practically impaired." *Id.* at 1023.

The disposition of this case will determine the parties' rights to PACA trust funds being held by defendants. As a result, denial of Trinity Fruit's motion to intervene would impede its ability to protect its asserted interest in those funds. The third factor, therefore, favors permitting

1  Trinity Fruit to intervene as of right. *See General Produce Co., LTD.*, 2:13-cv-0750-MCE-DAD,
2  at 3–4.

### 4. Inadequate Representation of Interest by Parties to the Action

"The burden on proposed intervenors in showing inadequate representation is minimal and would be satisfied if they could demonstrate that representation of their interests 'may be' inadequate." *Arakaki*, 324 F.3d at 1086 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10 (1972)). The Ninth Circuit considers three factors in determining the adequacy of representation:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th Cir. 1986).

"The most important factor in determining the adequacy of representation is how the interest compares with the interests of existing parties." *Arakaki*, 324 F.3d at 1086 (citing 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE & PROCEDURE § 1909, at 318 (1986)). If the proposed intervenor and an existing party seek to achieve the same objective, a presumption of adequacy of representation arises. *Id.* (citing *League of United Latin American Citizens*, 131 F.3d at 1305). "If the applicant's interest is identical to that of one of the present parties, a compelling showing should be required to demonstrate inadequate representation." *Id.* (citing 7C Wright, Miller & Kane, § 1909, at 318–19).

In this case, Trinity Fruit's interests are not aligned with those of the existing plaintiffs, as they all seek payment from the same limited funds. Accordingly, Trinity Fruit's interest would not be adequately represented by the existing plaintiffs.

### III. CONCLUSION

Because Trinity Fruit has satisfied all the requirements of Rule 24(a), Court GRANTS the motion to intervene (Doc. 14).

IT IS SO ORDERED.

7

Dated:  **April 2, 2025**                                /s/ *Sheila K. Oberto*
                                                        UNITED STATES MAGISTRATE JUDGE