UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KINGS RIVER PACKING LP, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>WKS AG CONSULTANTS INC. doing business as Top Shelf Produce Sales, et al.,<br><br>　　　　Defendants. | Case No. 1:25-cv-00022-JLT-SKO<br><br>**ORDER VACATING HEARING**<br><br>**FINDINGS AND RECOMMENDATIONS THAT PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT BE GRANTED WITH REDUCTION IN COSTS**<br><br>(Doc. 36)<br><br>**OBJECTIONS DUE: 14 DAYS** |

## I.　　INTRODUCTION

Plaintiffs Kings River Packing LP ("Kings River"), Silver Canyon Sales, Inc. ("Silver Canyon"), Mountain Fruit Sales Inc., ("Mountain Fruit"), and Kingsburg Orchards ("Kingsburg") (collectively, "Plaintiffs") assert that they sold and shipped produce in interstate commerce to Defendants WKS AG Consultants doing business as Top Shelf Produce Sales ("Top Shelf") and William Slattery ("Slattery") (collectively "Defendants"), which failed to pay for the produce. Plaintiffs seek to hold Defendants liable for violations of the Perishable Agricultural Commodity Act, 7 U.S.C. § 499a *et seq*. ("PACA"), federal common law, and applicable state law. (*See generally* Doc. 20.) Because Defendants failed to respond to the allegations in the complaint, Plaintiffs now seek default judgment against them. (Doc. 36.)

The Court finds the matter suitable for decision without oral argument pursuant to Local Rule 230(g). As such, the hearing on the motion set for October 15, 2025, is VACATED. For the reasons set forth below, the Court RECOMMENDS that Plaintiffs' motion for default judgment be GRANTED with a reduction in costs, as set forth below.[1]

## II.  PROCEDURAL HISTORY

On January 6, 2025, Kings River commenced this lawsuit to enforce its rights against Defendants under the PACA, including the statutory PACA trust (7 U.S.C. § 499e(c)) ("PACA Trust"), federal common law, and applicable state law, and to recover damages from them. (Doc. 1.) After successfully obtaining a preliminary injunction and expedited discovery (*see* Doc. 11), Kings River amended its complaint to join Silver Canyon, Mountain Fruit, and Kingsburg as plaintiffs. (Doc. 20.)

Although Defendants were properly served with the summons, original complaint, and the amended complaint (*see* Docs. 9, 10, 28, 29), they failed to respond to the operative complaint within the time prescribed by the Federal Rules of Civil Procedure. Upon application of Plaintiffs, default was entered against Defendants on May 12, 2025. (Docs. 31–32.) Plaintiffs filed the motion for default judgment now pending before the Court. (Doc. 36.) Defendants have neither appeared nor opposed the motion.

## III.  LEGAL STANDARDS GOVERNING DEFAULT JUDGMENT

The Federal Rules of Civil Procedure govern the entry of default judgment. After default is entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for a default judgment. Fed. R. Civ. P. 55(a)-(b). Upon the entry of default, well-pleaded factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven. *See Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987); *see also Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). In addition, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of North*

---

[1] This motion is referred to the undersigned by Local Rule 302(c)(19) for the entry of findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B).

*Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

Entry of default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The entry of default "does not automatically entitle the plaintiff to a court-ordered judgment. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal 2002); *see Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). The Ninth Circuit determined:

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Generally, the issuance of default judgment is disfavored. *Id.* at 1472.

### IV.   PLAINTIFFS' FACTUAL ALLEGATIONS AND EVIDENCE

The Court accepts Plaintiffs' factual assertions as true because default has been entered against Defendants. *See Televideo Sys.*, 826 F.2d at 917. With the motion now pending, Plaintiffs have also presented evidence, including in declaratory form and exhibits, which support the allegations in the complaint. (*See* Docs. 36-3–36-7.)

Between March 8, 2024, and September 10, 2024, Plaintiffs entered into contracts with Top Shelf in which Plaintiffs agreed to sell perishable agricultural commodities, namely produce, to Top Shelf in interstate commerce. (Doc. 20 ¶ 6; Doc. 36-3 ¶ 6; Doc. 36-4 ¶ 6; Doc. 36-5 ¶ 6; Doc. 36-6 ¶ 6.) Top Shelf agreed to pay Plaintiffs a total of $809,151.25 for the produce, calculated as follows (the "Transactions"):

| Plaintiff | Date Range | Balance |
|---|---|---|
| Kings River | March 8, 2024 – April 26, 2024 | $425,680.35 |
| Silver Canyon | July 18, 2024 – September 10, 2024 | $138,557.45 |
| Mountain View | July 18, 2024 – September 2, 2024 | $59,006.95 |
| Kingsburg | June 12, 2024 – August 19, 2024 | $185,906.50 |

(*Id.*)

During the Transactions, Plaintiffs and Top Shelf operated as "produce dealers" under PACA and held PACA licenses issued by the United States Department of Agriculture to buy and sell wholesale quantities of produce in interstate commerce. (Doc. 20 ¶¶ 20, 22; Doc. 36-3 ¶¶ 4–5; Doc. 36-4 ¶¶ 4–5; Doc. 36-5 ¶¶ 4–5; Doc. 36-6 ¶¶ 4–5.) Slattery was the Chief Executive Office and Chief Financial Officer of Top Shelf and was a reported "principal" on Top Shelf's PACA license. (Doc. 20 ¶ 34; Doc. 36-3 ¶ 5; Doc. 36-4 ¶ 5; Doc. 36-5 ¶ 5; Doc. 36-6 ¶ 5.) In this capacity, Slattery had control, or was in a position to exercise control, over Top Shelf's PACA Trust assets. (Doc. 20 ¶ 35.)

Top Shelf received and accepted the produce from Plaintiffs. (Doc. 20 ¶ 7; Doc. 36-3 ¶ 8; Doc. 36-4 ¶ 8; Doc. 36-5 ¶ 8; Doc. 36-6 ¶ 8.) Plaintiffs sent invoices to Top Shelf specifying the agreed quantities of produce and amounts due. (Doc. 20 ¶ 8; Doc. 36-3 ¶ 9; Doc. 36-4 ¶ 9; Doc. 36-5 ¶ 9; Doc. 36-6 ¶ 9.) Each invoice included the statutory language required to preserve Plaintiffs' PACA Trust benefits under 7 U.S.C. § 499e(c). (Doc. 20 ¶ 23; Doc. 36-3 ¶ 10; Doc. 36-4 ¶ 10; Doc. 36-5 ¶ 10; Doc. 36-6 ¶ 10.) The invoices from Kings River and Kingsburg specified that overdue balances would be subject to attorney's fees, collection costs, and a monthly interest rate of 1.5% (equivalent to 18% annually). (Doc. 20 ¶ 9; Doc. 36-3 ¶ 11; Doc. 36-6 ¶ 11.) Top Shelf did not object to these terms. (Doc. 20 ¶ 10; Doc. 36-3 ¶ 12; Doc. 36-6 ¶ 12.) Despite receiving and accepting the produce and invoices, Top Shelf failed to pay Plaintiffs. (Doc. 20 ¶ 11; Doc. 36-3 ¶ 13; Doc. 36-4 ¶ 11; Doc. 36-5 ¶ 11; Doc. 36-6 ¶ 13.)

## V.   DISCUSSION AND ANALYSIS

Applying the factors articulated by the Ninth Circuit in *Eitel*, the undersigned finds that entering default judgment is appropriate here.

### A.   Prejudice to Plaintiffs

The first factor considers whether a plaintiff would suffer prejudice if default judgment were not entered, and potential prejudice to the plaintiff weighs in favor of granting a default judgment. *See Pepsico, Inc.*, 238 F. Supp. 2d at 1177. Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover damages. *Id.*; *see also Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233, 1236–37 (E.D. Cal. 2008) ("Plaintiff will be prejudiced if

default judgment is denied because plaintiff will be without other recourse for recovery"). Because Plaintiffs have no other means to recover damages from Defendants, the Court finds Plaintiffs would be prejudiced if default judgment is not granted.

### B. Merits of Plaintiffs' claims and the sufficiency of the complaint

Given the kinship of these factors, the undersigned considers the merits of Plaintiffs' claims and the sufficiency of the complaint together. *See Yelp Inc. v. Catron,* 70 F. Supp. 3d 1082, 1098 (N.D. Cal. 2014) ("For ease of analysis, the merits of Plaintiffs substantive claims and sufficiency of the complaint are considered together"); *see also Premier Pool Mgmt. Corp. v. Lusk*, 2012 WL 15932060, at *5 (E.D. Cal. May 4, 2012). The Ninth Circuit has suggested that, when combined, the factors require a plaintiff to "state a claim on which the plaintiff may recover." *Pepsico, Inc.*, 238 F. Supp. 2d at 1175.

Here, Plaintiffs allege claims for PACA violations and related breach of fiduciary under federal common law, along with a claim for breach of contract under state law. (*See generally* Doc. 20.) The undersigned first considers the state law breach of contract claim (Count I), followed by the claims related to PACA (Counts II and IV).[2]

#### 1. Breach of contract

Plaintiffs' first claim for relief in the operative complaint is for breach of contract against Top Shelf. (Doc. 20 at 4.) A claim of breach of contract arises under state law and requires a plaintiff to demonstrate (1) the existence of a contract, (2) performance or excuse for nonperformance by the plaintiff, (3) breach by the defendants, and (4) resulting damages. *Alcalde v. NAC Real Estate Invs. & Assignments, Inc*., 316 F. App'x 661, 662 (9th Cir. 2009) (citing *First Comm. Mort. Co. v. Reece*, 108 Cal. Rptr. 2d 23, 33 (Ct. App. 2001)); *see also Haberbush v. Clark Oil Trading Co*., 33 F. App'x 896, 898 (9th Cir. 2002) (identifying "agreement, consideration, performance by plaintiff, breach by defendant, and damages" as elements to a breach of contract).

Plaintiffs allege that between March 8, 2024, and September 10, 2024, they entered into contracts with Top Shelf in which they agreed to sell produce to Top Shelf in interstate commerce,

---

[2] Plaintiffs do not seek default judgment on Count III, seeking the creation of a common fund under PACA and entry of a permanent injunction, and instead request that the claim be dismissed without prejudice under Fed. R. Civ. P. 41. (Doc. 36 at 3; Doc. 36-2 at 16.)

5

and Top Shelf agreed to pay them a total of $809,151.25 for the produce. (Doc. 20 ¶ 6; Doc. 36-3 ¶ 6; Doc. 36-4 ¶ 6; Doc. 36-5 ¶ 6; Doc. 36-6 ¶ 6.) Thus, Plaintiffs have established that contracts existed between them and Top Shelf. Further, Plaintiffs report Top Shelf received and accepted the produce from them, and they sent invoices to Top Shelf specifying the agreed quantities of produce and amounts due. (Doc. 20 ¶¶ 7–8; Doc. 36-3 ¶¶ 8–9; Doc. 36-4 ¶¶ 8–9; Doc. 36-5 ¶¶ 8–9; Doc. 36-6 ¶¶ 8–9.) Plaintiffs also report that, despite receiving and accepting the produce and invoices, Top Shelf failed to pay Plaintiffs. (Doc. 20 ¶ 11; Doc. 36-3 ¶ 13; Doc. 36-4 ¶ 11; Doc. 36-5 ¶ 11; Doc. 36-6 ¶ 13.) Thus, Top Shelf breached the agreements with Plaintiffs. As a result of this breach, Plaintiffs "incurred damages of $809,151.25, plus interest at the applicable annual rate from the date each transaction became past due, along with attorneys' fees and costs." (Doc. 20 ¶¶ 12, 17; Doc. 36-3 ¶ 14; Doc. 36-4 ¶ 12; Doc. 36-5 ¶ 12; Doc. 36-6 ¶ 14.) Consequently, the Court finds Plaintiffs have sufficiently pleaded a meritorious claim for a breach of contract under California law against Top Shelf.

### 2.    PACA-related claims

The PACA was enacted to "suppress unfair and fraudulent practices in the marketing of fruits and vegetables in interstate and foreign commerce" and "provides a code of fair play . . . and aid to [agricultural] traders in enforcing their contracts." 7 C.F.R. Part 46, Fed. Reg. 45735, 45737 (Nov. 20, 1984).

Under the PACA, it is unlawful for any commission merchant, dealer, or broker to "fail or refuse truly and correctly to account and make full payment in respect of any transaction in any [perishable commodity] to the person with whom such transaction is had . . . or to fail to maintain the trust as required." 7 U.S.C. § 499b(4). A trustee must hold any commodities and receivables, or proceeds from the sale of the commodities, in trust for the benefit of all unpaid suppliers or sellers until full payment of the amount owed has been received. 7 U.S.C. § 499e(c).

To enforce a trust under the PACA, a plaintiff must demonstrate:

> (1) the commodities sold were perishable agricultural commodities, (2) the purchaser was a commission merchant, dealer, or broker, (3) the transaction occurred in contemplation of interstate or foreign commerce, (4) the seller has not received full payment on the transaction, and (5) the seller preserved its trust rights by including statutory language referencing the trust on its invoices.

*Beachside Produce, LLC v. Flemming Enterprises, LLC,* No. C–06–04957 JW, 2007 WL 1655554, at *2 (N.D. Cal. June 6, 2007) (citing 7 U.S.C. § 499e(c)(3), (4); 7 C.F.R. § 46.46(c), (f)).  In addition, "individual shareholders, officers, or directors of a corporation who are in a position to control PACA trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under the Act." *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 283 (9th Cir. 1997).

Here, Plaintiffs and Top Shelf operated as "produce dealers" under PACA and held PACA licenses issued by the United States Department of Agriculture to buy and sell wholesale quantities of produce in interstate commerce. (Doc. 20 ¶¶ 20, 22; Doc. 36-3 ¶¶ 4–5; Doc. 36-4 ¶¶ 4–5; Doc. 36-5 ¶¶ 4–5; Doc. 36-6 ¶¶ 4–5.)  Slattery was the Chief Executive Office and Chief Financial Officer of Top Shelf and was a reported "principal" on Top Shelf's PACA license. (Doc. 20 ¶ 34; Doc. 36-3 ¶ 5; Doc. 36-4 ¶ 5; Doc. 36-5 ¶ 5; Doc. 36-6 ¶ 5.)  In this capacity, Slattery had control, or was in a position to exercise control, over Top Shelf's PACA Trust assets. (Doc. 20 ¶ 35.)  Top Shelf received and accepted the produce from Plaintiffs. (Doc. 20 ¶ 7; Doc. 36-3 ¶ 8; Doc. 36-4 ¶ 8; Doc. 36-5 ¶ 8; Doc. 36-6 ¶ 8.)  Plaintiffs sent invoices to Top Shelf specifying the agreed quantities of produce and amounts due. (Doc. 20 ¶ 8; Doc. 36-3 ¶ 9; Doc. 36-4 ¶ 9; Doc. 36-5 ¶ 9; Doc. 36-6 ¶ 9.)  Each invoice included the statutory language required to preserve Plaintiffs' PACA Trust benefits under 7 U.S.C. § 499e(c). (Doc. 20 ¶ 23; Doc. 36-3 ¶ 10; Doc. 36-4 ¶ 10; Doc. 36-5 ¶ 10; Doc. 36-6 ¶ 10.)  Despite receiving and accepting the produce and invoices, Top Shelf failed to pay Plaintiffs the amounts owed. (Doc. 20 ¶ 11; Doc. 36-3 ¶ 13; Doc. 36-4 ¶ 11; Doc. 36-5 ¶ 11; Doc. 36-6 ¶ 13.)

Plaintiffs have alleged facts supporting the creation of a trust and a breach of that trust under 7 U.S.C. § 499b(4) by Top Shelf.  Plaintiffs have also alleged that the individual defendant Slattery was a principal of Top Shelf, and as such controlled or was in a position to control the PACA Trust assets of Top Shelf, but the company failed to preserve those assets for Plaintiffs. (Doc. 20 ¶¶ 34–35; Doc. 36-3 ¶ 5; Doc. 36-4 ¶ 5; Doc. 36-5 ¶ 5; Doc. 36-6 ¶ 5.)  Because Slattery breached his fiduciary duty, he may be held personally liable for the tortuous act. *Sunkist*, 104 F.3d at 283; *accord Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701 (2nd Cir. 2007).  Consequently, the

Court finds Plaintiffs have sufficiently stated claims under PACA against Top Shelf and a related breach of fiduciary duty claim under federal common law against Slattery.

### C.    Sum of money at stake

In considering this factor, the Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Pepsico, Inc.*, 238 F.Supp.2d at 1176. Here, Plaintiffs seek judgment in the total amount of $1,015,341.71. (Doc. 36.) This amount represents the principal sum owed after the sale of produce by Plaintiffs to Top Shelf, together with prejudgment interest, attorney's fees, and costs of suit. (*See id*.) Top Shelf did not comply with its obligations under PACA, and Slattery violated his fiduciary duty. Thus, the amount of damages is proportional to Defendants' conduct, and this factor does not weigh against default judgment.

### D.    Possibility of dispute concerning material facts

There is little possibility of dispute concerning material facts because the allegations in the complaint are taken as true, *Televideo Sys.*, 826 F.2d at 917–18, and Defendants have submitted nothing to contradict the well-pleaded allegations in the complaint. *See Elektra Entm't Group, Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists"); *United Specialty Insurance Co. v. Saleh*, No. 1:16-cv-00632-DAD-MJS, 2016 WL 4434479, at *2 (E.D. Cal. Aug. 22, 2016) ("Inasmuch as default serves as an admission of Plaintiff's well-pled allegations of fact, it must be concluded that there is no dispute as to any material fact.") (internal citation omitted). Therefore, this factor does not weigh against default judgment.

### E.    Whether default was due to excusable neglect

Generally, the Court will consider whether a defendant's actions—such as failure to file an answer—is due to excusable neglect. *See Eitel*, 782 F.2d at 1472. Here, Defendants were served with the summons, original complaint, and the operative amended complaint. (Docs. 9, 10, 28, 29.) Defendants failed to file responsive pleadings or oppose Plaintiffs' motion for default judgment. The Court has no evidence before it to demonstrate Defendants' failure to participate in the litigation is due to excusable neglect. Thus, it is unlikely the failure to respond was the result of excusable

8

neglect. *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because the defendants "were properly served with the Complaint, the notice of entry of default"). Accordingly, this factor does not weigh against default judgment.

### F.  Policy disfavoring default judgment

As noted above, default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Here, however, the policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits does not weigh against default judgment because Defendants' failure to appear makes a decision on the merits impractical.

## VI.  RELIEF REQUESTED

Based upon the foregoing, Plaintiffs have established (1) that Top Shelf breached its contracts and violated the PACA, and that Slattery breached his fiduciary duty under the PACA to Plaintiffs, and (2) the *Eitel* factors weigh in favor of granting default judgment on those claims. Therefore, the Court turns to the relief requested for these claims and the evidence presented by Plaintiffs regarding damages. *See Televideo Sys.*, 826 F.2d at 917 (allegations regarding the amount of damages must be proven); *see also DR JKL Ltd. v. HPC IT Educ. Ctr.,* 749 F. Supp. 2d 1038, 1051 (N.D. Cal. 2010) ("Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages").

### A.  Damages

Under the PACA, a "commission merchant, dealer, or broker. . . shall be liable to the person or persons injured . . . for the full amount of damages" after a violation. 7 U.S.C. §499e(a). A plaintiff is also entitled to damages for breach of contract under California law in "the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." *Glob. Hawk Ins. Co. (RRG) v. Wesco Ins. Co.*, 424 F. Supp. 3d 848, 854 (C.D. Cal. 2019) (quoting Cal. Civ. Code § 3300).

Here, Plaintiffs seek a total of $809,151.25 for the principal sum due on the unpaid invoices, calculated as follows:

| Plaintiff | Date Range | Balance |
|---|---|---|
| Kings River | March 8, 2024 – April 26, 2024 | $425,680.35 |
| Silver Canyon | July 18, 2024 – September 10, 2024 | $138,557.45 |
| Mountain View | July 18, 2024 – September 2, 2024 | $59,006.95 |
| Kingsburg | June 12, 2024 – August 19, 2024 | $185,906.50 |

(Doc. 20 ¶ 6; Doc. 36-3 ¶ 6; Doc. 36-4 ¶ 6; Doc. 36-5 ¶ 6; Doc. 36-6 ¶ 6.)

Based upon the evidence presented, which includes the invoices, the undersigned finds Top Shelf is liable for breach of contract (Count I), Slattery is liable for breach of fiduciary duty (Count IV), and Defendants are liable for the violations of PACA (Count II), and recommends Plaintiffs' motion for damages be granted in the amount of $809,151.25.[3]

### B. Prejudgment Interest

Next, Kings River and Kingsburg seek $113,229.47 and $43,012.28, respectively, in prejudgment interest on the principal balance that accrued through and including October 15, 2025, the hearing date for the motion, based on the language in their invoices requiring a monthly interest rate on overdue balances of 1.5% (equivalent to 18% per annum). (Doc. 36-2 at 18–19; Doc. 20 ¶ 9; Doc. 36-3 ¶ 11; Doc. 36-6 ¶ 11; Doc. 37-7 ¶¶ 16–19.) Silver Canyon and Mountain Fruit, whose invoices did not include an interest term, request $19,722.48 and $7,283.07, respectively, in statutory prejudgment interest through and including October 15, 2025, based on the currently legal interest rate under California law of 10% per annum. (Doc. 36-2 at 22–24; Doc. 37-7 ¶¶ 16–19.) The undersigned takes each group's request in turn.

#### 1. Kings River and Kingsburg

"Prejudgment interest is an element of compensation, not a penalty." *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 988 (9th Cir. 2001). In cases involving PACA trust enforcements, courts may properly award prejudgment interest if supported by a contractual right. *Middle Mountain Land & Produce Inc. v. Sound Commodities Inc.*, 307 F.3d 1220, 1223 (9th Cir. 2002). In such cases, courts typically defer to the contracted interest rate. *See, e.g., W. Veg-Produce, Inc. v. Lexy Grp.*, No. 2:18-cv-00180-ODW (AGRx), 2018 WL 1804689, at *7 (C.D. Cal. Apr. 16, 2018)

---

[3] Count III, seeking the creation of a common fund under PACA and entry of a permanent injunction, is recommended to be dismissed without prejudice under Fed. R. Civ. P. 41, per Plaintiffs' request. *See* n. 2, *supra*.

10

(awarding prejudgment interest at the contracted rate of 18% per year in a PACA case); *Fam. Tree Produce, Inc. v. Bautista*, No. SA CV 13-00364-DOC (MLGx), 2013 WL 6733576, at *5 (C.D. Cal. Dec. 13, 2013) (same, upon motion for default judgment).

The Ninth Circuit in *Middle Mountain Land & Produce* declined to determine whether an invoice created a contractual right in a PACA case, and instead remanded that issue to the district court. 307 F.3d at 1225. However, in other contexts, the Ninth Circuit determined that terms expressed in an invoice for the sale of goods impose contractual duties. *See United States ex rel. Hawaiian Rock Prods. Corp. v. A.E. Lopez Enters.*, 74 F.3d 972, 976 (9th Cir. 1996).

In *Southwest Concrete Products v. Gosh Construction Corp.*, 51 Cal. 3d 701, 709 (Cal. 1990), the California Supreme Court determined that late charges, in the form of interest, become "part of the contract under section 2207 of the California Uniform Commercial Code." This statute provides that terms added in an invoice, for example, "become part of the contract unless: (a) The offer expressly limits acceptance to the terms of the offer; (b) They materially alter it; or (c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received." Cal. U. Com. Code § 2207(2).

The invoices of Kings River and Kingsburg each provide that, "Finance charges will accrue on any past-due balance at the rate of 1 ½ % per month (18% per annum) from the date each invoice becomes past due, or the maximum rate of interest allowable by law, and will be computed daily and compounded annually." (Doc. 36-3 ¶ 10, Ex. 3; Doc. 36-6 ¶ 10, Ex. 3.) Under the circumstances, the undersigned finds that this prejudgment interest term, to which Top Shelf did not object, does not materially alter and is supported by the contract between the parties for the PACA goods, and therefore, recommends Kings River's and Kingsburg's request for prejudgment interest be granted in the amounts of $113,229.47 and $43,012.28, respectively.

    2.  <u>Silver Canyon and Mountain Fruit</u>

Under Ninth Circuit law, absent contractual rights, courts have broad discretion to award prejudgment interest under PACA. *See Middle Mountain Land*, 307 F.3d at 1225–26 (holding that "a district court may award reasonable prejudgment interest to PACA claimants if such an award is necessary to protect the interests of PACA claimants . . . ."). Here, the Court finds the award of

prejudgment interest appropriate. Furthermore, the Court is satisfied with Plaintiffs' reasoning for application of California Civil Code section 3289(b), which sets out a legal rate of interest in breach-of-contract cases. (*See* Doc. 36-2 at 24.) Therefore, the undersigned finds that Silver Canyon and Mountain Fruit may recover prejudgment interest in the amount of $19,722.48 and $7,283.07, respectively.

### C. Post judgment interest

Title 28 U.S.C. § 1961(a) provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." *Id.* Plaintiffs, therefore, are entitled by statute to post judgment interest. *See, e.g., Johnston Farms v. Yusufov*, No. 1:17-cv-00016-LJO-SKO, 2017 WL 6571527, at *10 (E.D. Cal. Dec. 26, 2017) (awarding post judgment interest under 28 U.S.C. §1961 in a PACA case).

### D. Attorney's fees

"As with many other commercial sellers, those who sell perishable agricultural commodities may include contractual provisions for attorneys' fees and interest to account for losses that arise from delay in payment under a contractual credit arrangement." *Middle Mountain Land*, 307 F.3d at 1223. "A fair reading of [PACA] brings contractually due attorneys' fees and interest within the scope of the statute's protection of 'full payment owing in connection with the [perishable agricultural commodities] transaction.'" *Id.* (quoting 7 U.S.C. § 499e(c)(2)). Here, the invoices state: "In the event any action or proceeding is commenced to enforce the terms of this transaction or to enforce the seller's PACA trust rights, the buyer agrees to pay all costs of enforcement, including all attorneys' fees, together with any costs and expenses, as additional sums owed in connection with this transaction." (Doc. 36-3 ¶ 10, Ex. 3; Doc. 36-6 ¶ 10, Ex. 3.) The undersigned finds that language sufficient to support a claim for attorney's fees. *See Wahluke Produce, Inc. v. Guerra Mktg. Int'l Inc.*, No. 1:11-cv-1981 LJO–BAM, 2012 WL 1601876, at *6 (E.D. Cal. May 7, 2012); *Sequoia Sales, Inc. v. P.Y. Produce, LLC*, No. CV 10–5757 CW (NJV), 2011 WL 3607242, at *19–21 (N.D. Cal. July 29, 2011) (citing *Coosemans*, 485 F.3d at 709).

Using the lodestar method, Kings River and Kingsburg request $17,570.36 and $3,313.07, respectively, in attorney's fees, which represent each of their pro rata share of attorney's fees based on their gross claim as a percentage of Plaintiffs' total claim. (Doc. 36-2 at 19–22; Doc. 36-7 ¶¶ 11–15.) Courts in the Ninth Circuit calculate attorney's fees using the lodestar method, whereby a court multiplies "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgeport Fin., Inc*., 523 F.3d 973, 978 (9th Cir. 2008) (citation omitted).

1. Reasonable hourly rates

The reasonable hourly rates are to be calculated according to the prevailing market rates in the relevant legal community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *see also Shirrod v. Office Workers' Comp. Programs*, 809 F.3d 1082, 1086 (9th Cir. 2015); *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011). The relevant legal community is the forum where the district court sits. *Shirrod*, 809 F.3d at 1086. The fee applicant bears the burden of showing that the requested rates are "in line with those prevailing in the community." *Hiken v. Dep't of Def*., 836 F.3d 1037, 1044 (9th Cir. 2016) (quoting *Camacho*, 523 F.3d at 980); *see also United Steelworkers of Am. v. Phelps Dodge Corp*., 896 F.2d 403, 407 (9th Cir. 1990) ("Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate.")

In support of their requested amounts, Kings River and Kingsburg provide a declaration from Steven M. De Falco, who is one of the attorneys of record for Plaintiffs. (Doc. 36-7.) They request hourly rates between $350 and $425 for attorneys with 19 to 37 years of experience handling PACA matters, and between $125 and $225 for a paralegal with over 30 years of experience. (*Id*.)

Upon consideration of the declaration and exhibits submitted by Mr. De Falco, the attorneys' and paralegal's experience, and other rates approved in this District, the undersigned finds that the requested rates are reasonable. *See Kang v. Credit Bureau Connection, Inc*., No. 1:18-cv-01359-SKO, 2023 WL 6811994, at *12 (E.D. Cal. Oct. 16, 2023) ("The Court has performed a

comprehensive survey of attorney fees awarded in the Eastern District and finds current hourly rates range from $200 to $750, with hourly rates exceeding $600 reserved for attorneys who have been practicing approximately 30 years . . . . .") (collecting cases); *Aldapa v. Fowler Packing Co. Inc.*, No. 1:15-cv-00420-ADA-SAB, 2023 WL 3853482, at *11 (E.D. Cal. June 6, 2023) (finding hourly rates from $225 to $250 for paralegals "fair and reasonable").

### 2. Hours reasonably expended

A fee applicant must provide time records documenting the tasks completed and the amount of time spent. *See Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945–46 (9th Cir. 2007). Under California law, a court "must carefully review attorney documentation of hours expended" to determine whether the time reported was reasonable. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) (quoting *Serrano v. Priest*, 20 Cal. 3d 25, 48 (1977)). Thus, evidence provided by the fee applicant "should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended." *Christian Rsch. Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1320 (2008). The court must exclude "duplicative or excessive" time from its fee award. *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 161 (2006); *see also Ketchum*, 24 Cal. 4th at 1132 (stating "inefficient or duplicative efforts [are] not subject to compensation").

The billing records and declaration submitted by Kings River and Kingsburg indicate that their attorneys and paralegal expended 84.2 billable hours on this case. (*See* Doc. 36-6 ¶ 8.) Upon review of the declaration and billing records, the Court finds 84.2 hours to be reasonable and supported in view of the tasks completed, including litigating a successful motion for a preliminary injunction and expedited discovery, conducting a deposition of Slattery, and amending the complaint. (*Id.* ¶ 9.)

Based on the foregoing, the undersigned will therefore recommend awarding Kings River and Kingsburg their pro rata share of attorney's fees in the amounts of $17,570.36 and $3,313.07, respectively.

### E. Costs

In addition to attorney's fees, Plaintiffs seek the recovery of court costs under Fed. R. Civ.

P. 54(d) in the total amount of $2,059.73, comprised of the filing fee, service of the summons and complaint, copy costs, mailing and delivery of documents, and preparation of a deposition transcript. (Doc. 36-2 at 25; Doc. 36-7 ¶ 20.) Title 28 U.S.C. § 1920 ("Section 1920") allows a federal court to tax specific items as costs against a losing party pursuant to Federal Rule of Civil Procedure 54(d)(1). Section 1920 provides:

> A judge or clerk of any court of the United States may tax as costs the following:
> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.
> A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

28 U.S.C. § 1920. Costs generally are awarded to the prevailing party in a civil action as a matter of course unless the court directs otherwise. Fed. R. Civ. P. 54(d). The Court must limit an award of costs to those defined in Section 1920 unless otherwise provided for by statute. *Grove v. Wells Fargo Fin. Ca., Inc.*, 606 F.3d 577, 579–80 (9th Cir. 2010).

Here, Plaintiffs seek costs that are not provided for in Section 1920. The Court has no authority to award costs beyond those prescribed Section 1920 absent "plain evidence of congressional intent." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445,(1987). Costs requested for delivery and service of documents, such as $8.68 for mailing to the Court a courtesy copy of Kings River's preliminary injunction motion and $349 for personal delivery of the order granting said motion (*see* Doc. 36-7 ¶ 20), are not authorized under Section 1920. *See Nat'l Union Fire Ins. Co. of Pitt. v. Allied Prop. & Cas. Ins*. Co., No. 2:12-cv-01380-MCE-KJN, 2014 WL 3529980, at *1 (E.D. Cal. July 16, 2014) ("Communication charges like courier [and] mail . . . costs cannot be taxed" under section 1920.") (citing *El–Fadl v. Central Bank of Jordan*, 163 F.R.D. 389,

390 (D.D.C.1995); *see also Cooper v. United Air Lines, Inc*., Case No. 13-cv-02870-JSC, 2015 WL 3548572, at *3(N.D. Cal. June 5, 2015) ("[C]ourier charges are not one of the enumerated categories of recoverable costs in § 1920"); *Bonilla v. KDH Backhoe Serv*., No. C-05-3259 EMC, 2007 WL 39307, at *3 (N.D. Cal. Jan. 4, 2007) (finding "messenger services" "fall outside of the[ ] parameters" of section 1920). Accordingly, Plaintiffs' request for these costs is denied. With these deductions, the undersigned finds Plaintiffs are entitled to $1,702.05 in costs under federal law, as provided under Section 1920. *See* Fed. R. Civ. P. 54(d).

## VII.  FINDINGS AND RECOMMENDATIONS

The *Eitel* factors weigh in favor of granting default judgment as to Counts I, II, and IV of the First Amended Complaint, and the entry of default judgment is within the discretion of the Court. *See Aldabe*, 616 F.2d at 1092. Based upon the foregoing, the hearing set for October 15, 2025, is VACATED, and the undersigned RECOMMENDS:

1. The motion for default judgment (Doc. 36) as to Counts I, II, and IV of the First Amended Complaint be GRANTED;

2. JUDGMENT be ENTERED against Defendant WKS AG Consultants doing business as Top Shelf Produce Sales on Count I of the First Amended Complaint; against Defendant William Slattery on Count III of the First Amended Complaint; and against Defendants WKS AG Consultants doing business as Top Shelf Produce Sales and William Slattery, jointly and severally, on Count II of the First Amended Complaint, in the following amounts:

    a. To Plaintiff Kings River Packing LP: $556,480.18, comprising a principal balance in the amount of $425,680.35; $113,229.47 in prejudgment interest; and $17,570.36 in attorney's fees;

    b. To Plaintiff Silver Canyon Sales, Inc.: $158,279.93, comprising a principal balance of $138,557.45; and $19,722.48 in prejudgment interest;

    c. To Plaintiff Mountain Fruit Sales Inc.: $66,290.02, comprising a principal balance of $59,006.95; and $7,283.07 in prejudgment

|     |     |     |
| --- | --- | --- |
|     |     | interest; |
|     | d.  | To Plaintiff Kingsburg Orchards: $232,231.85, comprising a principal balance of $185,906.50; $43,012.28 in prejudgment interest; and $3,313.07 in attorney's fees; and |
|     | e.  | To all Plaintiffs: Post judgment interest under 28 U.S.C. § 1961 and $1,702.05 in costs. |

3. Count III of the First Amended Complaint be DISMISSED without prejudice pursuant to Fed. R. Civ. P. 41(a)(2); and

4. The Clerk of Court be directed to CLOSE this case.

Plaintiffs are HEREBY ORDERED to mail a copy of these findings and recommendations to each of the defendants at their last known address(es).

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. **Within fourteen (14) days of service** of these findings and recommendations, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:    **October 9, 2025**                    */s/ Sheila K. Oberto*
                                           UNITED STATES MAGISTRATE JUDGE

17